******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

UNITED AMUSEMENTS AND VENDING
COMPANY *v.* DANIEL SABIA
(AC 38233)

Alvord, Prescott and Lavery, Js.

*Syllabus*

The plaintiff equipment leasing company sought to recover damages from
the defendant for breach of a contract the parties had entered into,
pursuant to which it would lease equipment, including a video game
machine, dart machines, an automated teller machine, pool tables, and
a jukebox, to the defendant for use in his bar. After the plaintiff pur-
chased the necessary equipment from third parties, the equipment was
never installed at the bar. The plaintiff made multiple failed attempts
to contact the defendant and, thereafter, filed the present breach of
contract action. Following a trial to the court, the court rendered judg-
ment in favor of the plaintiff, awarding the plaintiff, inter alia, $15,000
in damages and $5000 in attorney's fees, from which the defendant
appealed to this court. Subsequently, the trial court vacated the award
of attorney's fees. *Held*:

1. The defendant's appeal was taken from a final judgment; even though
   the issue of contractual attorney's fees remained outstanding, the judg-
   ment on the merits of the breach of contract action was a final judgment
   for purposes of appeal.
2. The defendant's claim that the trial court improperly failed to find that the
   contract was unenforceable based on the defendant's special defenses
   of mistake and duress was not reviewable, the defendant having failed
   to meet his burden of providing this court with an adequate record for
   review of his claim; even though the defendant pleaded mistake and
   duress as special defenses in his answer to the complaint and argued
   those defenses at trial, the trial court made no findings of fact or any
   rulings regarding those defenses, the court did not file a written memo-
   randum of decision or prepare and sign a transcript of an oral ruling,
   the defendant did not file a notice with the appellate clerk concerning
   the trial court's failure to file either a written memorandum or a signed
   transcript, he did not seek an articulation from the court regarding his
   special defenses, and although the record before this court included the
   trial transcript, this court could not identify any portion of the transcript
   that encompassed the trial court's factual findings or rulings with respect
   to the defendant's claims of mistake and duress.
3. The record was inadequate to review the defendant's claim that the trial
   court incorrectly awarded damages based on unconscionable provisions
   of the contract; the court did not make any findings of fact or rulings
   regarding unconscionability, file a written memorandum of decision, or
   prepare and sign a transcript of an oral ruling, and the defendant did
   not seek an articulation regarding this issue or file with the appellate
   clerk a notice concerning the trial court's failure to file either a written
   memorandum or a signed transcript.
4. The trial court's determination of damages was clearly erroneous and
   not supported by the record; there was no basis in the evidence for the
   court's award of $10,000 to the plaintiff in damages, based on a 50
   percent restocking fee claimed by the plaintiff, nor was there a basis
   in the evidence for the court's award of $500 per month for ten months
   as an operator's commission, and, thus, this court was left with the
   definite and firm conviction that a mistake had been committed in the
   calculation of damages.

Argued October 25, 2017—officially released February 6, 2018

*Procedural History*

Action to recover damages for breach of contract,
and for other relief, brought to the Superior Court in
the judicial district of Fairfield and tried to the court,
*Hon. Edward F. Stodolink*, judge trial referee; judgment

for the plaintiff, from which the defendant appealed to this court; thereafter, the court, *Hon. Edward F. Stodolink*, judge trial referee, granted the plaintiff's motion to vacate the award of attorney's fees. *Reversed in part; further proceedings.*

*Joel Z. Green*, with whom, on the brief, was *Linda Pesce Laske*, for the appellant (defendant).

*David Eric Ross*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. In this action for breach of contract arising out of a commercial lease, the defendant, Daniel Sabia, appeals, following a trial to the court, from the judgment rendered in favor of the plaintiff, United Amusements & Vending Company, on the plaintiff's single count complaint. The trial court, *Hon. Edward F. Stodolink*, judge trial referee, awarded $15,000 in damages. The defendant claims on appeal that the trial court (1) failed to find the contract unenforceable based on the defendant's special defenses of mistake and duress; (2) awarded damages based on unconscionable provisions of the contract; and (3) awarded damages inconsistent with the contract and evidence. We agree with the defendant's third claim. Accordingly, we reverse in part the judgment of the court and remand the case for a hearing in damages. We otherwise affirm the court's judgment.

The following facts, which the trial court reasonably could have found, and procedural history are pertinent to our decision. Around September, 2012, the plaintiff's president, Jonathan Dentz, contacted the defendant to arrange a meeting to discuss a possible business relationship between the parties. Dentz then met with the defendant on September 9, 2012, at the South Side Café in Torrington (bar), which the defendant owns through a limited liability company. The two discussed the possibility of the plaintiff leasing equipment to the defendant for use in the bar, including a video game machine, dart machines, an automated teller machine (ATM), pool tables, and a jukebox. The defendant already had similar equipment in the bar, but was not under contract with his then current vendor. Dentz went over the standard contract the plaintiff used, and the two came to an agreement on the terms for revenue sharing. The defendant inquired as to an advance on the commissions that would be due. Upon learning that the defendant was earning about $500 per month from his current vendor, Dentz agreed to advance $6000 to the defendant.

Dentz left the bar and drew up the contract. The next day, one of the plaintiff's other employees went to the bar with the contract and an advance commission check. The defendant signed the contract on September 10, 2012, and accepted the check. The plaintiff then purchased the equipment pursuant to the contract from third parties.

The purchased equipment was never installed at the bar. About three weeks after the contract was signed, Dentz attempted to call the defendant and left multiple messages, but received no response. Then, in October, 2012, the defendant mailed the uncashed commission check to the plaintiff. The plaintiff sent a demand letter on November 2, 2012, informing the defendant that it believed the defendant had breached the contract, and

that it would seek damages if the defendant did not settle the matter within seven days.

The plaintiff filed a breach of contract action on December 5, 2012, seeking damages, costs of suit, attorney's fees, and interest. In his answer, the defendant admitted signing the contract, but denied defaulting on the agreement. After a trial on July 22, 2015, the court awarded the plaintiff $15,000 in damages, $5000 in attorney's fees, and $687.48 in costs. At the plaintiff's request, the court vacated the award of attorney's fees on May 10, 2016, because the parties had agreed at trial to address attorney's fees after trial. The defendant appealed. We will set forth additional facts as necessary.

As a threshold issue, we must address whether this appeal was taken from a final judgment, as the award of attorney's fees was vacated and is still pending. In *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988), our Supreme Court promulgated a bright line rule that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." Although *Paranteau* itself concerned statutory attorney's fees under the Connecticut Unfair Trade Practices Act, its holding has been applied to other attorney's fees awards. See *Hylton* v. *Gunter*, 313 Conn. 472, 484–85, 97 A.3d 970 (2014) (applying *Paranteau* rule to punitive damages); *Benvenuto* v. *Mahajan*, 245 Conn. 495, 501, 715 A.2d 743 (1998) (applying *Paranteau* rule to strict foreclosure case).

Although our Supreme Court has not addressed contractual attorney's fees outside of dicta or footnotes, this court applied the *Paranteau* bright line rule in *Doyle Group* v. *Alaskans for Cuddy*, 164 Conn. App. 209, 222, 137 A.3d 809, cert. denied, 321 Conn. 924, 138 A.3d 284 (2016), holding that "regardless of whether the issue of . . . contractual attorney's fees remained outstanding, the [trial] court's . . . judgment was final for purposes of appeal." Thus, despite the issue of attorney's fees in the present case being unresolved, the judgment on the breach of contract is a final judgment for purposes of appeal.

I

On appeal, the defendant first claims that the trial court failed to find the contract unenforceable based on the defendant's special defenses of mistake and duress.[1] We set forth the relevant standard of review regarding equitable claims. "The determination of what equity requires in a particular case . . . is a matter for the discretion of the trial court. . . . This court must make every reasonable presumption in favor of the trial court's decision when reviewing a claim of abuse of discretion. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied

the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *People's United Bank* v. *Sarno*, 160 Conn. App. 748, 754, 125 A.3d 1065 (2015).

We must first consider whether we have an adequate record for review of the defendant's claim regarding his special defenses. We conclude that we do not. Although the defendant pleaded mistake and duress as special defenses in his answer to the complaint and argued these defenses at trial, the trial court made no findings of fact or any rulings regarding these defenses, nor did the court file a written memorandum of decision or prepare and sign a transcript of an oral ruling. See Practice Book § 64-1 (a). The defendant did not file, in accordance with our rules of practice, a notice with the appellate clerk of the failure of the trial court to file either a written memorandum or a signed transcript. See Practice Book § 64-1 (b). When the defendant later sought an articulation from the court, he only requested articulation regarding damages and attorney's fees, and did not ask the court to address his special defenses. "As the appellant, the defendant has the burden of providing this court with a record from which this court can review any alleged claims of error. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." (Citation omitted; internal quotation marks omitted.) *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 72, 167 A.3d 430, cert. denied, 327 Conn. 957, 172 A.3d 205 (2017); see also Practice Book § 61-10 (a) ("[i]t is the responsibility of the appellant to provide an adequate record for review"); *Michaels* v. *Michaels*, 163 Conn. App. 837, 844–45, 136 A.3d 1282 (2016) (record inadequate where there was no memorandum of decision or signed transcript, appellant did not file notice pursuant to Practice Book § 64-1, and appellant did not seek articulation). Although the record before us includes the trial transcript, we cannot readily identify any portion of the transcript that encompasses the court's factual findings or rulings with respect to the defendant's claims of mistake and duress. Additionally, because there is neither a memorandum of decision nor an articulation regarding these claims, the record is inadequate to review the defendant's claim. See *Michaels* v. *Michaels*, supra, 845.

II

The defendant also claims that the court incorrectly awarded damages based on unconscionable provisions of the contract. "Because unconscionability is a matter of law to be decided by the court . . . our review on appeal is not limited by the clearly erroneous standard . . . but is, rather, a plenary review. . . . We defer, however, to the trial court's factual findings that underlie the determination of unconscionability unless they

are clearly erroneous." (Citations omitted.) *Emlee Equipment Leasing Corp.* v. *Waterbury Transmission, Inc.*, 31 Conn. App. 455, 461, 626 A.2d 307 (1993); see also General Statutes § 42a-2A-107 (a).

The defendant argued that the contract provisions were unconscionable at trial, but, like the defendant's special defenses, the trial court did not make any findings of fact or rulings regarding unconscionability, file a written memorandum of decision, or prepare and sign a transcript of an oral ruling, nor did the defendant seek an articulation regarding this issue or file with the appellate clerk a notice of the failure of the trial court to file either a written memorandum or a signed transcript. We likewise conclude that because there were no factual findings regarding unconscionability, either written or oral, the record is inadequate to review the defendant's claim of error. See *Michaels* v. *Michaels*, supra, 163 Conn. App. 845.

### III

Finally, the defendant claims that the trial court incorrectly calculated damages. Specifically, he claims that the award was inconsistent with the evidence presented at trial.[2] We agree.

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which [it] would have been in had the contract been performed. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 185, 90 A.3d 219 (2014).

The following additional evidence, which was presented at trial, and procedural history are pertinent to our decision. At trial, Dentz testified that the defendant told him that the defendant was receiving approximately $500 per month as his share of revenue under his then current arrangement.[3] Dentz and the defendant used this figure to determine what amount the plaintiff would advance the defendant. Dentz then testified that the plaintiff incurred costs of $19,574.78 in acquiring from third parties the dart machines, jukebox, and ATM for the bar, and presented the invoices to support this claim.

On cross-examination, Dentz admitted that the plaintiff did not return the equipment and that it was still in its warehouse. Dentz stated that he inquired about returning the equipment, but upon finding out that there

would be a restocking fee of about 50 percent, he elected not to return the equipment. After the defendant did not accept delivery, the plaintiff leased out other jukeboxes and ATMs, but no other dart machines.[4]

At the conclusion of trial, the court stated: "I've heard the testimony of the parties. I've also reviewed in brief the exhibits. This is sort of a mixed basis for a damage award. We have the fact that the contract calls for some $20,000 in equipment to be reimbursed. It also calls for liquidated damages over a large period of time. On the other hand, the defense has indicated that there are some questions about the accuracy of those claims. . . . [T]he court will enter a judgment in favor of the plaintiff for a principal amount of $15,000 . . . ."

The defendant later moved for an articulation, asking (1) the manner and method by which the court calculated and determined the amount of damages awarded and (2) the evidence and findings of fact relied upon in fashioning the award of damages. In its articulation, the court stated: "The judgment of $15,000 consists of a $10,000 restocking charge for the equipment purchased, as shown in exhibit 4, and an operator's commission of $500 per month for ten months, a reasonable period of time, in order that the plaintiff can redirect the use of the machines shown in exhibit 4 to other locations." As to the basis of its findings, the court directed the defendant to "[s]ee exhibits 1 and 4 and the testimony of . . . Dentz."

We conclude that the court's calculation of damages was incorrect. First, the court awarded $10,000 in damages based on a 50 percent restocking fee claimed by the plaintiff. This damages award for a restocking fee finds no basis in the evidence. Although Dentz testified to being quoted a restocking fee of about 50 percent, Dentz also testified that the plaintiff did not return the equipment, and, therefore, did not incur any restocking fee. Moreover, at least one invoice in exhibit 4 belies the 50 percent figure. The second invoice, for the ATM, clearly states that "all returned merchandise will be subject to a 25 percent restocking fee plus the original shipping cost." Thus, the plaintiff would have forfeited the $250 freight cost, and the restocking fee for the return of the $3698 machine would have been $924.50, not $1849.

Second, the court's award of $500 per month for ten months as an operator's commission finds no basis in the evidence. At trial, Dentz testified that the plaintiff advanced the defendant $6000 because the defendant claimed he had been receiving approximately $500 per month under his then current equipment deal. There is no evidence in the record to support that this arrangement was in any way similar to the revenue sharing agreed to in the parties' contract. In addition, that $500 figure included revenue derived from all equipment in the bar, which would necessarily include any pool

tables or video game machines then present. Although the contract included provisions for the lease of two pool tables and a video game machine, the plaintiff did not claim any damages with respect to this equipment, which in turn would have affected the calculation of revenue. Additionally, the $500 per month figure represented the defendant's share of revenue, not his previous lessor's share. Thus, it is inappropriate to equate the parties' shares of revenue under this contract because not all revenue was to be split evenly between the parties. Although evidence showed that some of the leased equipment would have involved a 50-50 split of revenue under the contract, notably, the jukebox and ATM would not.[5]

On the basis of our review of the evidence, we are left with the definite and firm conviction that a mistake has been committed in the calculation of damages; therefore, we cannot uphold it. In light of our conclusion, we do not address whether the plaintiff failed to mitigate its damages, as that issue will be addressed on remand.

Finally, we "must observe that this case has been presented with virtually total disregard of the relevant provisions of our statutes, in particular . . . the Uniform Commercial Code . . . . While it is true that the Code incorporates, by reference, supplementary general principles of contract law and of the law merchant . . . such supplemental bodies of law cannot displace those provisions of the Code that are directly applicable." (Citations omitted.) *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 270, 439 A.2d 314 (1981) (*Peters, J.*). Article 2A of the Uniform Commercial Code "applies to any transaction regardless of form which creates a lease."[6] General Statutes § 42a-2A-103. Therefore, on remand, we direct the parties' attention to the sections of article 2A pertaining to remedies for default, General Statutes § 42a-2A-701 et seq.[7]

The judgment is reversed with respect to the award of damages and the case is remanded for a hearing in damages in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In his principal brief, the defendant did not raise any claim of error regarding the court's disposition of his special defense of unclean hands. In its brief, the plaintiff addresses an unclean hands claim that the defendant did not brief. In his reply, the defendant then analyzes unclean hands for the first time. It is well established that we do not review claims raised for the first time in a reply brief, because "[o]ur practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief . . . ." (Internal quotation marks omitted.) *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009). The defendant, however, did not frame the issue, so even though the plaintiff addressed unclean hands, it could not fully respond to an argument that did not exist. Accordingly, we decline to review this claim.

[2] The defendant also claims that the damages award was inconsistent with the liquidated damages provision of the contract. Because we are firmly convinced that the damages award as articulated by the court was incorrectly

calculated based on the evidence adduced at trial, we do not address whether the award was consistent with the liquidated damages provision of the contract.

[3] This is the only evidence of any revenue in the entire record.

[4] The plaintiff made no claim for damages regarding the pool tables or video game machine it purchased, as those were placed in other establishments.

[5] The revenue splitting for the ATM was to be: the full surcharge to the plaintiff and $0.50 per transaction to the defendant. The revenue splitting for the jukebox was to be: the first $75 kept each week and then 50 percent of the balance to the plaintiff, and the first $75 deducted each week and then 50 percent to the defendant.

[6] We note that, prior to the present case, no appellate court of this state has addressed article 2A since its adoption in this state, although it was used before its adoption for its instructiveness in a claim of unconscionability in a finance lease in *Emlee Equipment Leasing Corp.* v. *Waterbury Transmission, Inc.*, supra, 31 Conn. App. 455.

[7] We particularly direct the parties' attention to General Statutes § 42a-2A-716, which provides in part: "(a) If the lessee wrongfully rejects or revokes acceptance of goods or fails to make a payment when due or repudiates with respect to a part or the whole, the lessee is in default under the lease contract with respect to any goods involved, and with respect to all of the goods if under an installment lease contract the value of the whole lease contract is substantially impaired, and the lessor may do one or more of the following:

"(1) Withhold delivery of the goods and take possession of goods previously delivered;

"(2) Stop delivery of the goods by any carrier or bailee under subsection (b) of section 42a-2A-719;

"(3) Proceed under section 42a-2A-718 with respect to goods still unidentified to the lease contract or unfinished;

"(4) Obtain specific performance under section 42a-2A-708 or recover the rent under section 42a-2A-722;

"(5) Dispose of the goods and recover damages under section 42a-2A-720 or retain the goods and recover damages under section 42a-2A-721;

"(6) Recover incidental and consequential damages under sections 42a-2A-706 and 42a-2A-707;

"(7) Cancel the lease contract under section 42a-2A-709;

"(8) Recover liquidated damages under section 42a-2A-710;

"(9) Enforce limited remedies under section 42a-2A-711;

"(10) Recover damages under section 42a-2A-705; or

"(11) Exercise any other rights or pursue any other remedies provided in the lease agreement.

"(b) If the lessor does not fully exercise a right or obtain a remedy to which the lessor is entitled under subsection (a) of this section, the lessor may recover the loss resulting in the ordinary course of events from the lessee's default as determined in any reasonable manner, together with incidental damages, less expenses avoided as a result of the lessee's default. . . ." We note that some of these remedies may be inapplicable to the present case.