******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER WHITE *v.* LATIMER POINT CONDOMINIUM
ASSOCIATION, INC., ET AL.
(AC 41345)

Keller, Bright and Flynn, Js.

*Syllabus*

The plaintiff, an owner of a condominium unit that is part of the defendant
condominium association, sought, inter alia, a permanent injunction
against the association and the defendants J and E, owners of a neigh-
boring condominium unit, to prevent J and E from rebuilding their unit,
pursuant to federal and town regulations, after the original unit sustained
storm damage. The plaintiff alleged that the rebuilding plan, as approved
by the association's board, would decrease the plaintiff's water views
of Long Island Sound to a percentage not permitted by the association's
bylaws. Although the initial rebuilding plans did project a decrease of
the plaintiff's water views in violation of the bylaws, the plan that was
approved actually projected an increase of the plaintiff's water views
by over 2 percent with certain tree trimming and vegetation removal.
After the plaintiff appeal to the association's board, which upheld the
approval of the construction application, he filed an action in the Supe-
rior Court, which rendered judgment in favor of the defendants, conclud-
ing that the plaintiff had failed to establish that the actions of the
association in approving the construction application of J and E were
improper. The plaintiff then appealed to this court, claiming, inter alia,
that the court rendered a judgment that was neither legally correct nor
factually supported by the record in that the court failed to make factual
findings to support its decision. *Held* that the plaintiff failed to demon-
strate that the court erred in rendering judgment in favor of the defen-
dants, as the record could be read to support the court's conclusion
that the plaintiff had failed to meet his burden; because the court's
decision lacked detailed factual findings and a statement regarding its
legal bases, there was no way for this court to determine whether the
trial court found the plaintiff's testimony or evidence concerning the
reduction in his primary water view not credible, whether it weighed
the evidence and found the defendants' evidence more credible or simply
more persuasive, or whether something else persuaded the court that
the plaintiff had not met his burden, as the plaintiff, who argued that
the court failed to make any factual findings but did not seek an articula-
tion or rectification of the court's decision, did nothing to ensure that
this court would have a record on appeal that included such factual
findings and the legal bases for the court decision, there was no indica-
tion in the record that the trial court disregarded case law, as claimed
by the plaintiff, and in the absence of an articulation, this court presumed
that the trial court acted correctly and undertook a proper analysis of
the law.

Argued March 18—officially released August 13, 2019

*Procedural History*

Action for, inter alia, a permanent injunction to pro-
hibit the defendant home owners from continuing con-
struction on a new condominium unit, and for other
relief, brought to the Superior Court in the judicial dis-
trict of New London and tried to the court, *Hon. Joseph
Q. Koletsky*, judge trial referee; judgment for the defen-
dants, from which the plaintiff appealed to this court.
*Affirmed.*

*Vincent John Purnhagen*, for the appellant (plaintiff).

*Robert B. Flynn*, for the appellees (defendants).

*Opinion*

BRIGHT, J. The plaintiff, Peter White, appeals from the judgment of the trial court, ruling in favor of the defendants, Latimer Point Condominium Association, Inc., (association), and Gennaro Modugno and Elizabeth Modugno, whom we collectively refer to as the Modugnos, on the plaintiff's complaint, which was brought pursuant to General Statutes § 47-278.[1] On appeal, the plaintiff claims that the court misapplied and disregarded relevant case law, that it failed to apply properly the 10 percent rule contained in the association's bylaws,[2] that it ignored overwhelming evidence that the association failed to comply with its tree trimming schedule, and that it rendered a judgment that is neither legally correct nor factually supported by the record. We affirm the judgment of the trial court.

The record reveals the following uncontested facts and procedural history, which are relevant to the plaintiff's appeal. The plaintiff is the owner of unit 23 at the Latimer Point Condominiums (Latimer), a common interest ownership community established pursuant to General Statutes § 47-200 et seq. Latimer is situated on Fishers Island Sound in Stonington. The Modugnos are owners of unit 7 at Latimer. Unit 7 is situated between unit 23 and Fishers Island Sound. All of the unit owners at Latimer are organized as the association, and the association is governed by a board of directors (board). The association, pursuant to Article XIV of its bylaws, has in place an Architectural Control Committee (committee) that is staffed and managed by volunteers.

Because of extensive storm damage to unit 7, the Modugnos applied for approval from the committee to build a new home, elevated in height, to meet the new Federal Emergency Management Agency building standards and the town of Stonington's zoning regulations. The plaintiff objected to the application on the ground that the new home would interfere substantially with his water view, by obstructing that view by more than the 10 percent allowed under the bylaws. In particular, § 14.1.2 of the bylaws provides, in relevant part, that the association "shall ensure that no member's water view shall ever be diminished by more than 10 [percent] due to cumulative constructions of other units and/or the association, without the written consent of such member(s) . . . . In the event any unit's water view is increased by action pursuant to [§] 14.2, or other means, such increase shall be included in the 10 [percent] determination." Section 14.2 provides, in relevant part, that "in order to reasonably preserve trees and vegetation on members' properties; and to enhance members' . . . existing water views from their units; the board and the [committee] shall regulate the planting, cutting, trimming and removal of trees, shrubs, hedges, and vegetation."

The committee retained Arthur Hayward, a licensed land surveyor, to conduct a primary water view analysis to determine whether the Modugnos' proposed new home would obstruct the plaintiff's primary water view to a degree greater than allowed by the bylaws. Hayward concluded that the Modugnos' proposed house would decrease the plaintiff's water view by 15.4 percent if there was no offsetting vegetation removal and trimming. With various vegetation removal and trimming, however, Hayward concluded that the plaintiff's water view after construction of the Modugnos' new house actually would increase by 41.2 percent. The plaintiff offered no contrary evidence to the committee.

On the basis of Hayward's conclusions, the committee determined that it was obliged to approve the Modugnos' proposal. Nevertheless, it did not order all of the vegetation removal suggested by Hayward. In particular, it ordered one tree trimmed, instead of removed. As a result, Hayward recalculated the effect on the plaintiff's water view and determined that the plaintiff's water view still would be increased by a net 2.1 percent with the Modugnos' proposed house and the vegetation removal and trimming ordered by the committee. Following the committee's approval, the plaintiff appealed to the board, which upheld the committee's decision. The construction plans later were approved by the Stonington Planning and Zoning Commission, and the Modugnos proceeded to build their home.

During this process, the plaintiff filed an action in the Superior Court, pursuant to § 47-278. In count one of his amended complaint, the plaintiff alleged that the committee and the association "failed to follow and enforce the provisions of Article XIV of the bylaws for construction projects as it pertains to unit owner water view protection when it approved [the] Modugnos construction application [(application)] thereby negatively impacting the primary water view of the plaintiff's unit in contravention of the bylaws." He also alleged, in count two, that the association was in violation of § 47-278 because "the tree trimmings [were] not being carried out by the [association] as it resolved in September, 2005."[3] The plaintiff sought a temporary and permanent injunction enjoining the Modugnos from "commencing or continuing with the construction" of their home,[4] an order requiring the committee and the association to follow and enforce the bylaws, monetary damages, costs and attorney's fees, as well as any other legal or equitable relief appropriate.

The case was tried to the court over five days.[5] The plaintiff's only witness was himself. Relevant to this appeal, the plaintiff testified, among other things, that he, as a layperson, calculated the loss of his primary water view from construction of the Modugnos' house as 16.3 percent without vegetation trimming and

removal and 15.4 percent with such trimming and removal. The plaintiff based his calculations on a photograph of his primary water view on which he overlaid grids to calculate the loss of his water view. He also testified about a 2002 dispute with another neighbor over the trimming of chokecherry trees, which resulted in the committee in 2005 adopting a trimming schedule for those trees. He further testified that the committee had failed to trim the trees according to that schedule.

The defendants called four witnesses, including Hayward. Hayward testified about his training and experience as a licensed professional land surveyor since 1975. He then testified at length regarding the method he used to reach the conclusions he reported to the committee regarding the effect the Modugnos' construction of their new house would have on the plaintiff's primary water view. In particular, he explained how he determined that the house would reduce the plaintiff's water view by 15.4 percent without any vegetation removal or trimming and would increase the plaintiff's water view by 2.1 percent with vegetation trimming and removal as specified by the committee. He also testified regarding the differences between his methodology and that used by the plaintiff.

The defendants also presented Andrew Feinstein, the chairman of the committee. Feinstein testified that he was chairman during the period when the committee approved the Modugnos' application, and had been on the committee since 2008. He testified about the process by which the Modugnos' application was approved. He also testified about the committee's process for trimming trees, and specifically about the chokecherry trees on which the plaintiff testified. He testified as to when the trimmings of the chokecherry trees took place and testified that more extensive trimming of the trees has occurred since approval of the Modugnos' construction in order to ensure that the plaintiff's primary water view is maintained.

At the conclusion of the trial, the court rendered judgment orally in favor of the defendants, concluding that the plaintiff had failed to establish that the actions of the association in approving the defendants' construction application were improper. This appeal followed.

The plaintiff claims that the court failed to apply properly the 10 percent rule contained in the bylaws, ignored overwhelming evidence that the association failed to comply with its tree trimming schedule, and rendered a judgment that is neither legally correct nor factually supported by the record. The plaintiff also complains throughout his appellate brief that the court failed to make any factual findings, including his argument that "[b]ecause the trial court made absolutely no findings of fact in its memorandum of decision, it is impossible to determine how exactly the trial court

came to its conclusion that the defendants were in substantial compliance with the bylaws. By reaching its decision without making any findings of fact in support thereof, the trial court was able to completely disregard relevant case law . . . ." He also argues that "there was no specific finding of fact by the trial court that, due to the tree trimming and vegetation removal proposed by the [committee], the [Modugnos'] 2015 building application was brought into compliance with the bylaws' [10] percent rule." On the basis of the limited record before us, we conclude that the plaintiff's claims are fatally flawed.

When the facts underlying a claim on appeal are not in dispute and that claim is subject to plenary review, "the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal." (Footnote omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 396, 757 A.2d 1074 (2000). When, however, the plaintiff's claim necessarily challenges the court's factual determinations, we employ the clearly erroneous standard of review to the court's factual findings: "A finding of fact will not be disturbed unless it is clearly erroneous . . . . In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo." (Citations omitted; internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436–37, 845 A.2d 382 (2004). Moreover, "[i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Internal quotation marks omitted.) *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 737, 66 A.3d 848 (2013).

At the outset, we observe that our review of the plaintiff's claims is not foreclosed completely but, rather, is restricted severely by the following circumstances. First, we note that there is no indication in the record before us that the trial court "completely disregard[ed] relevant case law." Although the court's decision in this case lacks detailed factual findings and a statement regarding its legal bases, and although the plaintiff raises this insufficiency throughout his appellate brief, the plaintiff did nothing to help ensure that we would have a record on appeal that included such factual findings and the legal bases for the court's decision. In this case, the trial court rendered a short oral decision, which stated in relevant part: "I find on all counts for the [Modugos] and the [association]. *The plaintiff has failed to prove* that there was other than substantial compliance with the bylaws in respect to the actions of the [b]oard in approving the . . . appli-

cation for the Modugno[s'] 2015 construction—the 2015 [a]pplication. . . . [J]udgment . . . enters for the defendant[s]. . . . [T]he court finds that . . . *the plaintiff has failed to prove* that the [b]oard's action approving the 2015 application was in any way improper." (Emphasis added.)

Second, although rendering judgment in favor of the defendants on the entirety of the plaintiff's complaint, the court's decision did not mention the second count of the plaintiff's complaint, regarding the tree trimming schedule, in its decision. See *United Amusements & Vending Co.* v. *Sabia*, 179 Conn. App. 555, 560–62, 180 A.3d 630 (2018) (Appellate Court unable to review claims of error because trial court made no factual findings related to claims and appellant did not request articulation).[6]

Third, the plaintiff did not seek an articulation or a rectification of the court's decision pursuant to Practice Book § 66-5, and he failed to alert the court to the fact that its oral decision did not comply with the requirements of Practice Book § 64-1.

Practice Book § 64-1 provides in relevant part: "(a) The trial court shall state its decision either orally or in writing, in all of the following: (1) in rendering judgments in trials to the court in civil and criminal matters . . . . *The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . .*

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by subsection (a), the appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with subsection (a). The notice shall specify the trial judge involved and the date of the ruling for which no memorandum of decision was filed. The appellate clerk shall promptly notify the trial judge of the filing of the appeal and the notice. The trial court shall thereafter comply with subsection (a)." (Emphasis added.)

Practice Book § 66-5 provides in relevant part: "A motion seeking corrections in the transcript or the trial court record or seeking an articulation or further articulation of the decision of the trial court shall be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought and shall be filed with the appellate clerk. Any other party may oppose the motion by filing an opposition with the appellate clerk within ten days of the filing of the motion for rectification or articulation. The trial court may, in its discretion, require assistance from the parties in providing an articulation. Such assistance may include, but is not limited to, provision of copies of transcripts and exhibits. . . ."[7]

Consequently, in the present case, we lack the benefit of any findings or legal bases for the decision of the trial court, other than the court's finding that "the plaintiff has failed to prove that there was other than substantial compliance with the bylaws in respect to the actions of the [b]oard in approving the . . . application for the Modugno[s'] 2015 construction—the 2015 [a]pplication." "Where an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment." *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991). Citing *Bell Food Services, Inc.*, this court recently reaffirmed that "our appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation*, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of fact were necessary." (Emphasis in original) *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 396, A.3d (2019); see also *Sunset Gold Realty, LLC* v. *Premier Building & Development, Inc.*, 133 Conn. App. 445, 456 n.7, 36 A.3d 243 ("[b]ecause neither of the parties requested an articulation to fortify the record, to the extent that it is unclear what the court relied on . . . we read an ambiguous trial record to support, rather than undermine, the judgment"), cert. denied, 304 Conn. 912, 40 A.3d 319 (2012).

The record in this case can be read in a number of ways to support the trial court's finding that the plaintiff failed to meet his burden of proof. The court may have found the plaintiff's testimony regarding the reduction in his primary water view not credible. Alternatively, the court simply may have found Hayward's testimony more persuasive than that of the plaintiff. As noted previously in this opinion, the plaintiff testified as a layperson. Hayward has been a licensed professional land surveyor for more than forty years. Furthermore, the court was not required to accept the plaintiff's proffered methodology over Hayward's.

Indeed, during oral argument before this court, the plaintiff's attorney specifically was asked by Judge Flynn: "Well, let me ask you something, there were two views of the evidence, correct . . . one that the 10 percent rule was satisfied, and one that it was not?" Counsel responded: "Yes, Your Honor." Counsel then agreed that this required that he demonstrate clear error in the trial court's decision in order to be successful on appeal. Nevertheless, because there was conflicting evidence of compliance, and the court set forth no factual findings or legal bases in its decision, the plaintiff cannot demonstrate clear error, and we will not presume it. The same is true with respect to the plaintiff's

argument that the committee, the board, and the court should not have relied on anticipated vegetation removal and trimming to conclude that there was compliance with the 10 percent rule. The court may have found the plaintiff's testimony and other evidence unpersuasive or it may have concluded that Feinstein's testimony was more believable.

In conclusion, the court found that the plaintiff did not prove his case; we know nothing more than that. There is no way for us to determine whether the court found the plaintiff's testimony and/or evidence completely noncredible, whether it weighed the evidence and found the defendants' evidence more credible or simply more persuasive, or whether something else persuaded the court that the plaintiff had not met his burden.

"This court will neither speculate with regard to the rationale underlying the court's decision nor, in the absence of a record that demonstrates that error exists, presume that the court acted erroneously. See, e.g., *State* v. *Milner*, 325 Conn. 1, 13, 155 A.3d 730 (2017); *Stacy B.* v. *Robert S.*, 165 Conn. App. 374, 382, 140 A.3d 1004 (2016)." *Rose B.* v. *Dawson*, 175 Conn. App. 800, 805; 169 A.3d 346 (2017). "It is well settled that [we] do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *Ellen S.* v. *Katlyn F.*, 175 Conn. App. 559, 565, 167 A.3d 1182 (2017). Because the record can be read to support the court's conclusion that the plaintiff failed to meet his burden, the plaintiff has failed to demonstrate that the court erred.

The judgment is affirmed.

In this opinion, the other judges concurred.

[1] General Statutes § 47-278 provides: "(a) A declarant, association, unit owner or any other person subject to this chapter may bring an action to enforce a right granted or obligation imposed by this chapter, the declaration or the bylaws. The court may award reasonable attorney's fees and costs.

"(b) Parties to a dispute arising under this chapter, the declaration or the bylaws may agree to resolve the dispute by any form of binding or nonbinding alternative dispute resolution, provided: (1) A declarant may agree with the association to do so only after the period of declarant control has expired; and (2) an agreement to submit to any form of binding alternative dispute resolution must be in a record authenticated by the parties.

"(c) (1) (A) Except as otherwise provided under subdivision (2) of this subsection, before an association brings an action or institutes a proceeding against a unit owner other than a declarant, the association shall schedule a hearing to be held during a regular or special meeting of the executive board and shall send a written notice by certified mail, return receipt requested, and by regular mail, to the unit owner at least ten business days prior to the date of such hearing. Such notice shall include a statement of the nature of the claim against the unit owner and the date, time and place of the hearing.

"(B) The unit owner shall have the right to give testimony orally or in writing at the hearing, either personally or through a representative, and the executive board shall consider such testimony in making a decision whether to bring an action or institute a proceeding against such unit owner.

"(C) The executive board shall make such decision and the association shall send such decision in writing by certified mail, return receipt requested, and by regular mail, to the unit owner, not later than thirty days after

the hearing.

"(2) The provisions of subdivision (1) of this subsection shall not apply to an action brought by an association against a unit owner (A) to prevent immediate and irreparable harm, or (B) to foreclose a lien for an assessment attributable to a unit or fines imposed against a unit owner pursuant to section 47-258.

"(d) (1) Any unit owner other than a declarant, seeking to enforce a right granted or obligation imposed by this chapter, the declaration or the bylaws against the association or another unit owner other than a declarant, may submit a written request to the association for a hearing before the executive board. Such request shall include a statement of the nature of the claim against the association or another unit owner.

"(2) Not later than thirty days after the association receives such request, the association shall schedule a hearing to be held during a regular or special meeting of the executive board and shall send written notice by certified mail, return receipt requested, and by regular mail, to the unit owner at least ten business days prior to the date of such hearing. Such notice shall include the date, time and place of the hearing. Such hearing shall be held not later than forty-five days after the association receives such request.

"(3) The executive board shall make a decision on the unit owner's claim and the association shall send such decision in writing by certified mail, return receipt requested, and by regular mail, to the unit owner, not later than thirty days after the hearing.

"(4) The failure of the association to comply with the provisions of this subsection shall not affect a unit owner's right to bring an action pursuant to subsection (a) of this section."

[2] Specifically, § 14.1.2 of the bylaws provides, in relevant part, that the association "shall ensure that no member's water view shall ever be diminished by more than 10 [percent] due to cumulative constructions of other units and/or the association, without the written consent of such member(s) . . . ."

[3] On appeal, the plaintiff also claims a violation of General Statutes § 47-75 (a), which provides: "Each unit owner, and the association of unit owners, shall comply with this chapter, the condominium instruments, and the rules and regulations adopted pursuant thereto. Failure to so comply shall be ground for an action to recover damages or for injunctive relief, or for any other relief to which the party bringing such action may be entitled. Such action may be brought by the association of unit owners against any unit owner or owners or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action. If any such action results in a final judgment or decree in favor of the party instituting such action, such judgment or decree may incorporate a provision for reasonable attorney's fees, as specified in such judgment or decree, to be paid by the party against whom such judgment or decree is entered." The plaintiff, however, did not allege such a violation in his complaint, nor did the trial court mention this statute in its decision. Accordingly, we do not consider it.

[4] The defendants argue, in part, as they did before the trial court, that the plaintiff was not entitled to the injunctive relief sought because the Modugnos had completed construction of their home, rendering their specifically requested relief moot, long before trial. They argue that the plaintiff never sought a temporary injunction to stop the construction, and that the plaintiff should be prohibited from modifying his requested relief to now include a request that the court order the Modugnos to tear down a portion of their completed home. The trial court did not rule on the mootness issue because it concluded that the plaintiff had failed to meet his burden on the issue of whether the association had failed to comply with its bylaws.

[5] The court consolidated for trial this case and a similar case in which owners of another Latimer unit alleged that the Modugnos' new house improperly decreased their water view. *Wojeck* v. *Latimer Point Condominium Assn. Inc.*, Superior Court, judicial district of New London, Docket No. CV-11-6010879-S (January 7, 2014).

[6] The defendants state in their brief that the plaintiff has appealed only from the court's judgment as to count one of his complaint, and that he has not appealed from the court's judgment in favor of the defendants on count two. The plaintiff did not dispute this contention in his reply brief. Although the plaintiff's appeal form does not limit his appeal to count one of his complaint, the plaintiff's briefs do not address substantively count two of his complaint, and the relief requested by the plaintiff on appeal relates solely to count one. Consequently, to the extent the plaintiff did appeal from the judgment rendered against him on count two of his com-

plaint, we deem any claims regarding that portion of the judgment abandoned. See *Awdziewicz* v. *Meriden*, 317 Conn. 122, 125 n.3, 115 A.3d 1084 (2015) ("[when] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived" [internal quotation marks omitted]); *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 319, 50 A.3d 841 (2012) ("[a]n appellant who fails to brief a claim abandons it" [emphasis omitted; internal quotation marks omitted]), cert. denied, 569 U.S. 918, 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013).

[7] Practice Book § 61-10 (b) provides in relevant part that "[t]he failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal." The commentary to that section explains, however, that "subsection (b) is not intended to preclude the court from declining to review an issue where the record is inadequate for reasons other than solely the failure to seek an articulation, such as, for example, the failure to procure the trial court's decision pursuant to Section 64-1 (b) . . . ."

---